McIlvaine, J.
As to the claim of the Home and Foreign Missions : It was, beyond doubt, the intention of the testator, that in case of the death of his widow and the death of his grandson, leaving no child or children, the real estate in dis-. pute should Ire sold by his executor, and the proceeds equally divided between the Missions. Rut, the testator dying within a year from the execution of the will, the contingent bequest to the Missions fell within the condemnatory terms of the proviso in section 1 of the "Wills Act of March. 30th, 1874, amending the act of 1852. The Section reads as follows :
“Section 1. That any person of full age and sound memory, having an interest in lands, tenements, or hereditaments, or any annuity or rent charged upon or issuing out of the same, or any goods, chattels, rights, credits, choses in action or possession, or any other property of any description whatever, may give and devise the same to any person, by last will and testament, lawfully executed; subject, nevertheless, to the rights of creditors, and to the provisions of this act, and of an act entitled ‘ An act to restrain the entailment of real estateProvided, that if such testator or testatrix shall die, leaving issue of his or her body living, or their legal representatives, or shall leave an adopted child or children living *596 or their legal representatives, and said will give, devise, or bequeath such estate, in whole or in part, to any benevolent, religious, educational or charitable purpose, or to any person in trust for any of such purposes, whether such trust appears upon the face of the instrument making such gift, devise, or bequest or not, to the state of Ohio, or any state or country, to any county, township, city, incorporated village, or other corporation or association, in this or any other State or country, in such case said last will, as to such gift, devise, or bequest, shall be invalid and void, unless such will (or if contained in a codicil thereto, then such codicil) shall have been duly executed according to law at least twelve calendar months prior to the decease of such testator or testatrix.”
In behalf of the Missionary Boards it is contended that this proviso does not apply to a bequest contingent upon the extinction of lineal descendants. This contention is based on the assumption that lineal heirs alone may object to such beqnest, as thq proviso was for their protection alone. But this assumption is not authorized by the statute. We can see no reason why any one interested in the descent and distribution of the estate may not assert the invalidity of the bequest. True, the invalidity of the bequest depends on the existence of lineal descendants, natural or adopted, at the death of the testator; but no use of the void bequest is preserved to lineal descendants. It remains in the general estate, and if not otherwise disposed of in the will, becomes intestate property.. The true character of such bequest, whether void or valid, is determined by the state of facts existing at the testator’s death, and not by any subsequent contingency.
A labored argument has also been submitted by counsel for the Missionáry Board to show that the proviso in ques-: tion is unconstitutional and void. The postulate of this argument seems to be that the right of the citizen to dispose of his property by will is a constitutional right which the legislature cannot destroy or abridge. Is this proposition true % Testamentary power is not referred to in terms, either in. ■ the constitution of the state or of the United States. It is contended that it is recognized by implication in section 1 of the Bill of Rights in the State Constitution, which reads :
*597 “ Section 1. All men are by nature free and independent, and have certain inalienable rights, among which are those, of enjoying and defending life and. liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety,”
We concede that the right to acquire property implies the right to dispose of it. But the inalienable rights here declared, as well as those implied, are possessed by living, not by dead men. A disposition by will does not take effect during the testator’s life, but operates only after his-death.
While the right of testamentary disposition may be, as Mr. Bedfield, in his work on wills, says, instinctive, it nevertheless depends solely on municipal law, and has never been regarded asa natural or inalienable right. It has always been subject to the control of legislative power, and such power is' not limited in this State by constitutional provision. Hence, it follows that the contingent bequests to the Home and Foreign Missions, contained in the will of Joseph D. Patton, who died within a year after the will was made, leaving the legal representative of a son surviving him, became absolutely void immediately at and after the death of the testator.
What, then, became of the title to the property in controversy, upon the death of the testator ?
Under the will, an estate for the life of the widow vested in her, and an estate in remainder, after the death of the widow, vested in the grandson, Joseph Frank, for his life. Kemainder over, in fee, to the child or children of Joseph Frank, if he should die leaving a child or children. There was no such “ child or children” in being. And no further disposition was made of the property by the will. True, the terms of the devise to Joseph Frank were ample to pass, subject to the life estate of the widow, a fee simple remainder, but construed in connection with other parts of the will, it is quite clear that the testator intended the estate devised to the grandson to be for his life only.
. It seems clear, therefore, that upon the death of the testator the whole estate, subject to the life estates of the widow and the grandson, vested by descent in the heir of the testator, *598 subject to be divested in favor of the child or children of Joseph Frank Patton, if he should die leaving any.
Joseph Frank Patton, therefor, sole heir of the testator, never having had a child or children, died seized of this estate in fee simple, and intestate.
The next question in the case is raised by the executor of Joseph D. Patton’s will, who claims the right under the will to sell the estate and administer upon the proceeds. Augusta A. Curtis and Jennie Hill, sisters of the mother of Joseph Frank Patton, as next of kin to the deceased Joseph Frank, claim that by the direction to sell contained in the will, the estate is to be regarded as converted into money, and passes to the next of kin as personalty. These claims may be disposed of together. The controlling question is: Did the testator intend that upon the death of Joseph Frank, without leaving a child or children, this property should be converted into money, although the bequests to the Mission Boards should be invalid and void ? It is not at all probable that the testator contemplated such contingency; but, on the other hand, we are satisfied that the sole reason of the testator in directing the sale of the land was for the purpose of dividing the proceeds, as money, between the two Boards of Mission. ■ If this be so, tl;e power of sale fell with the bequests. The direction in the Avill is, that “ If my said grandson, Joseph Frank Patton, die leaAnng no child or children, then I direct my said Executor or his successor, to sell all my real estate .... and the proceeds of such sale .... I direct to be paid share and share alike to the Board of Home Missions . . . and to the Board of Foreign Missions.” True, the contingency happened upon Avhich the testator intended the poAver to sell should accrue, and upon the happening of the same contingency the direction to pay the proceeds share and share alike to Mission Boards was to become absolute, according to the intention of the testator. But, by his death within a year from the making of the will, the directing as to the payment of the proceeds become inoperative and void, therefore the direction to sell also become inoperative and void.
*599 The law on this point is well stated in 1 Williams on Executors, 588, as follows:
“ The principle seems to be, that where the purpose of the testator still requires a sale of the whole land, and there is only a partial disposition of the produce, the surplus belongs to the heir, as money and not land, and will go to his personal representative. But where no purpose of the divisor demands, in the events that have happened, that the whole land shall be converted into money, then the heir shall take the resulting property as land, and it shall descend as such to his heir. Thus, where a divisor directs his land to be sold and the produce divided between A. and 13., the obvious purppse of the testator is, that there shall be a sale for the convenience of division ; and if A. dies in the lifetime of the divisor, and the heir stands in his place, the purpose of the testator still applies to the case. Therefore the heir will take the share of A. as money and not as land. But if A. and B. both die in the lifetime of the testator, and the whole interest in the land descends to the heir, the purpose of the testator, that there shall be a sale for the convenience of division, has no application, and the heir will take the whole interest as land.”
This brings us to the conclusion that the real estate of which the intestate, Joseph Frank Patton, died seized, the same being ancestral property, passed, at his death, to the brothers and sisters, and their representatives, of Joseph T). Patton, from whom the estate came, in accordance with the provisions of sections 415Revised Statutes, prescribing the course of descent of ancestral property.
And that the personal estate of which the intestate died possessed, be distributed to Augusta A. Curtis and Jennie Hill, sisters of intestate’s mother, and next of kin to said intestate, in accordance with the provisions of section 4163 of Revised Statutes. Decree accordingly, and cause remanded to the court of common pleas for partition, in accordance with the prayer of the petition.

Judgment accordingly.